IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUIS RAMOS** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 24-0816** |
| **v.** | : | |
| | : | |
| **PROGRESSIVE SPECIALTY** | : | |
| **INSURANCE COMPANY** | : | |
| *Defendant* | | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                         JULY 31, 2024

## MEMORANDUM OPINION

**INTRODUCTION**

      This civil action involves a dispute over automobile insurance policy coverage and an underlying state court action which involves a claim for personal injuries that occurred in a work-related fall during the course of employment at a construction site. In the case *sub judice*, Plaintiff Luis Ramos ("Ramos" or "Plaintiff") filed an amended operative complaint against Defendant Progressive Specialty Insurance Company ("Progressive") asserting a declaratory relief claim, (Count I), and a bad faith claim, (Count II), premised on Ramos' assertion that Progressive has an obligation to defend him, consistent with an automobile insurance policy, in the underlying state court case styled *De Leon v. Schweiger, Inc.*, Philadelphia County Court of Common Pleas, October Term, 2023, No. 02183 (the "Underlying State Court Action").[1]

      Presently, before the Court is Progressive's motion to dismiss the amended complaint filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), (ECF 9), which Ramos opposes,

---

[1]     Progressive removed this action from the Philadelphia County Court of Common Pleas pursuant to 28 U.S.C. §1441 on the basis of diversity jurisdiction. There is no dispute that the requirements for diversity jurisdiction, 28 U.S.C. § 1332, are met: Ramos is a citizen of Pennsylvania, Progressive is a citizen of Ohio, and the alleged amount in controversy exceeds $75,000. (Am. Compl., ECF 7, at ¶¶ 1-2, 8).

(ECF 12). The issues raised in the motion have been fully briefed and are ripe for disposition.[2] For the reasons set forth, Progressive's motion is granted, and this matter is dismissed.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true the well-pleaded allegations in the operative complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009). Here, the facts relevant to the motion to dismiss are summarized as follows:[3]

> A.   *Allegations in the Underlying State Court Action*
>
> Olvin Guerra De Leon ("De Leon") and Hilda Hernandes, husband and wife, filed a complaint in the Underlying State Court Action against Schweiger, Inc., Soft Contractor Corp., Ryan Homes, NVR, Inc., and Luis Ramos (Plaintiff here) claiming severe and permanent injuries and damages suffered when DeLeon fell at his workplace. (State Court Complaint, ECF 7-1, Ex. B). De Leon alleges therein that while in the course of his employment, he was working on the construction of a housing development (the "Construction Project"). (*Id.* at ¶ 25). While performing work-related duties on a surface without protected edges and without proper fall prevention measures, De Leon fell approximately thirty feet to the ground. (*Id.* at ¶¶ 26-28). Rather than calling 9-1-1 for an ambulance, Ramos, a worksite supervisor, instead, drove De Leon approximately fifty miles to Einstein Medical Center in North Philadelphia, allegedly "dumped" De Leon at the hospital entrance, and left. (*Id.* at ¶¶ 31-34).
>
> De Leon alleges that, as a result of his fall, he suffered severe, debilitating, and life-threatening injuries, including, *inter alia*: "intracranial epidural hemorrhage requiring complex craniectomy surgery to evacuate the bleeding and allow the brain to swell; [a] medically induced coma for twenty-one days; . . . multiple orbital fractures; . . . post-traumatic stress; . . . chronic physical pain; suffering and loss of life's pleasures, past, present, and future." (*Id.* at ¶ 35). De Leon also alleges that his medical condition "substantially worsened" "during" the fifty-mile drive to the hospital. (*Id.* at ¶ 33).

---

[2]   This Court also considered Progressive's reply. (ECF 13).

[3]   These facts are gleaned from the amended complaint in this matter, (ECF 7), the complaint filed in the Underlying State Court Action, (ECF 7-1, Ex. B), and the automobile insurance policy at issue, (ECF 7-1, Ex. A). *See Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (explaining that when determining whether an insurance company has a duty to defend, the court must look to the allegations in the underlying complaint and the insurance policy at issue).

In the State Court Complaint, De Leon asserts a single claim for negligence against Ramos, (*Id*. at ¶¶ 106-116), specifying, thirty-nine instances in which Ramos was negligent. (*Id.* at ¶ 114(a)-(mm)). Notably, none of these contentions include Ramos' use of a vehicle. (*Id.*).

*B.     The Insurance Policy*

There is no dispute that Ramos drove De Leon to the hospital in a vehicle that belonged to Mirayada Morales Alicea, ("Alicea"), and that Ramos had Alicea's permission to drive the vehicle. Also, there is no dispute that at all relevant times, the vehicle was covered by an automobile insurance policy (the "Policy") issued by Progressive.

The Policy, in its pertinent provisions, provides:

Part I—*Liability To Others of the Policy* provides, in part:

"If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident. **We** will settle or defend, at **our** option, any claim for damages covered by this Part I." (Policy, ECF 7-1, Ex. A, at p. 3).[4] The Policy defines each of the bolded terms as follows:

> "**[Y]ou**" refers to "(a) a person shown as a named insured on the declarations page; and (b) the spouse of a named insured if residing in the same household at the time of the loss." (*Id.* at p. 3, General Definitions ¶ 17).
>
> "**[W]e**" and "**our**" mean "the underwriting company providing the insurance, as shown on the declarations page." (*Id.* at General Definitions ¶ 16).
>
> "'**Bodily injury**' means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease." (*Id.* at p. 1, General Definitions ¶ 4).
>
> "'**Property damage**' means physical damage to, destruction of, or loss of use of, tangible property." (*Id.* at p. 2, General Definitions ¶ 9).
>
> "**Insured person**" means, in relevant part, "(b) any person with respect to an accident arising out of that person's use of a **covered auto** with the

---

4      All bolded terms appear as such in the Policy.

permission of **you**. . . ." (*Id.* at p. 3, Part I—Liability To Others, Additional Definition.[5]

**LEGAL STANDARD**

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 552 (2007). When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Thus, the moving party bears the burden of showing that no claim has been stated, *Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016), and dismissal is appropriate if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from

---

[5] Ramos asserts that he falls within subsection (b) of the definition of "insured person" provided above, making him a covered person under the Policy. (Pl.'s Opp., ECF 12, at p. 4).

conceivable to plausible.'" *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

Progressive moves to dismiss Ramos' amended complaint, arguing that the duty to defend claim (Count I) on the basis that the Underlying State Court Complaint does not allege a "covered" claim against Ramos or any other factual allegations that Ramos falls within the requisite Policy definition of "insured person." Specifically, Progressive argues that the work-related accident which caused DeLeon's injuries, alleged in the State Court Complaint, did not "aris[e] out of [Ramos'] use of a covered auto," as required by the Policy, nor does Ramos fall within the definition of an "insured person." (Policy, ECF 7-1, at p. 3, Additional Definition). As to Ramos' bad faith claim (Count II), Progressive argues that in the absence of a duty to defend, the bad faith claim fails as a matter of law. In his opposition, Ramos argues that the State Court Complaint does assert a claim against him premised on injuries arising out of his use of the covered car. These arguments are addressed below.

### A. *Progressive's Duty to Defend Ramos (Count I)*

Under Pennsylvania law,[6] an insurer's duty to defend is broader than its duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). "An insurance company's duty to defend a suit against an insured is determined solely on the basis of the allegations of the

---

[6] This Court notes that the Policy includes a choice of law provision which provides that "[a]ny disputes as to the coverage provided or the provisions of this policy shall be governed by the law of the state listed on your application as your residence." (ECF 7-1, Ex. A, at p. 27). Unfortunately, neither party has identified the state in which the insured (Alicea) resides. Notwithstanding, both parties, without discussion, apply only Pennsylvania law. Ordinarily, a federal court sitting in Pennsylvania applies Pennsylvania law to a contract claim when there is no "true conflict" between the law of Pennsylvania and the law of another potentially applicable state. *See, e.g.*, *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 230 (3d Cir. 2010). Here, neither party has identified any such conflict of law, nor is the court aware of any. Under these circumstances, this Court will apply Pennsylvania law.

5

complaint in the underlying action." *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 691-92 (E.D. Pa. 2012); *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) ("[The] duty to defend . . . an insured in a suit . . . depends upon a determination of whether the third party's complaint triggers coverage."). That is, an insurer has a duty to defend "if the factual allegations of the complaint on its face encompass an injury that is actually or *potentially* within the scope of the policy." *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) (internal quotations marks and citation omitted). "To identify a covered claim, we apply Pennsylvania's rule that *potentially* covered claims are identified by comparing the four corners of the insurance contract to the four corners of the complaint." *Lupu v. Loan City, LLC*, 903 F.3d 382, 385 (3d. Cir. 2018) (internal quotation marks and citation omitted). If the underlying complaint alleges "an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986); *see also Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 542 (Pa. 2010) ("The insurer's duty to defend exists until the claim is confined to a recovery that the policy does not cover." (citation omitted)). To prevent artful pleading, "it is necessary to look at the factual allegations in the complaint," and not how the underlying plaintiff frames the request for relief. *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). The mere allegation of "negligence" in a complaint is insufficient to trigger an insurer's duty to defend. *See id.* ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead[,] it is necessary to look at the factual allegations contained in the complaint." (citation omitted)); *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) ("[I]n focusing attention upon

6

the *cause of action* pled, [claimants] run afoul of our caselaw, which dictates that the *factual averments* contained in a complaint determine whether an insurer must defend.").

The interpretation of an insurance policy is a question of law. *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 170 (Pa. 2005). "When the language of the policy is clear and unambiguous, [the court must] give effect to that language." *Kvaerner Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d at 897 (internal quotation marks and citations omitted). In addressing insurance disputes under Pennsylvania law, the United States Court of Appeals for the Third Circuit (the "Third Circuit") outlined the approach that Pennsylvania district courts should take when reviewing insurance contract provisions, such as those at issue here, as follows:

> It is the function of the court to interpret insurance contracts under Pennsylvania law. The court's primary consideration in performing this function is to ascertain the intent of the parties as manifested by the language of the written instrument. The policy must be read as a whole and construed in accordance with the plain meaning of terms. Words of common usage must be construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms. Where the language of an insurance policy is clear and unambiguous, a court must enforce that language. Furthermore, if possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions. However, if the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous. Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control. Pennsylvania courts have applied this rule liberally.

*Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320-21 (3d Cir. 2011) (internal quotations marks and citations omitted); *see also Baumhammers*, 938 A.2d at 290-91; *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). Consistent with the above cited caselaw, to determine whether Progressive has a duty to defend Ramos in the Underlying State Court Action, this Court must interpret the language of the Policy to determine the scope of its coverage, and

7

examine the factual allegations in the State Court Complaint to ascertain if the facts assert a claim that may fall within the scope of insurance coverage. *See Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. Ct. 2011).

As noted, Progressive argues that it is not obligated to provide Ramos a defense in the Underlying State Court Action because the accident alleged in the State Court Complaint did not "arise out of" Ramos' "use" of a covered auto and, thus, Ramos does not fall within the definition of "insured person." As such, this Court's decision turns on whether the accident alleged in the State Court Complaint arose out of Ramos' use of a covered auto and whether Ramos falls within the Policy's definition of an "insured person."

Notably, both parties agree that for the Policy's coverage to apply, Ramos' "use" of the covered auto, as alleged in the State Court Complaint, must be causally connected to the alleged injury. (*See* Pl.'s Opp., ECF 12, at p. 4; Def.'s Mot., ECF 9-1, at p. 6). Interpreting similar coverage language in automobile insurance policies, the Third Circuit has held that "to be within the scope of coverage under such a policy, the use of the vehicle must be causally connected to the injury; where a vehicle is 'merely incidental' to the accident, it is not in 'use' within the meaning of the policy." *Agway Ins. Co. v. Goodville Mut. Cas.*, 48 F. App'x 37, 38 (3d Cir. 2002) (citing *State Auto. Ins. Ass'n v. Kuhfahl*, 527 A.2d 1039, 1043-44 (Pa. Super. Ct. 1987)).[7] Under this policy language, "Pennsylvania law requires 'vehicle-caused injuries,' not just injuries that happen to be sustained therein, when determining if automobile insurance coverage applies." *Eberhardinger v. City of York*, 341 F. Supp. 3d 420, 436 (M.D. Pa. 2018) (citing *Cummings v. State Farm Mut. Auto. Ins. Co.*, 596 A.2d 1138, 1139 (Pa. Super. Ct. 1991)); *see also Huber v.*

---

[7] Similar to the Policy at issue in the case *sub judice*, the automobile insurance policy at issue in *Agway* provided that the insurer will "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the . . . use of a covered 'auto.'" *Agway*, 48 F. App'x at 38.

8

*Erie Ins. Exch.*, 587 A.2d 333, 334 (Pa. Super. Ct. 1991) ("Automobile insurance is designed to compensate for vehicle-caused injuries." (citation omitted)).  "Causation . . . requires more than mere happenstance or fortuity."  *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 95 (3d Cir. 1996) (internal quotation marks and citation omitted).

Here, as argued by Progressive, the State Court Complaint does not include any factual allegations supporting any injury causally connected to Ramos' use of the covered auto.  To the contrary, the facts alleged in the State Court Complaint support only a work-related injury connected to De Leon's thirty-foot fall from a construction site.  Specifically, in the State Court Complaint, De Leon alleges that while "performing construction activities in his capacity as a laborer," he "fell approximately 30 [feet] and crashed violently to the ground" and "sustained severe, life-threatening injuries . . . *as a result of falling approximately 30 [feet] to the ground*."  (State Court Complaint, ECF 7-1, Ex. B, at ¶¶ 26-27, 30) (emphasis added).  Further, De Leon alleges that Ramos' "failure to properly and safely plan, manage, supervise, inspect, control and construct the project directly and proximately caused [De Leon's] severe and permanent injuries."  (*Id.* at ¶ 112).  De Leon goes on to allege additional acts/omissions underlying Ramos' alleged negligence.  (*Id.* at ¶ 114(a)-(mm)).  However, none of these alleged acts/omissions pertain to or are allegation of Ramos' use of the covered auto.  (*Id.*).

As previously noted, the Policy defines an insured person as any person with respect to an accident arising out of that person's use of a covered auto with the permission of you.  In light of these alleged facts, and the absence of any factual allegations or negligent acts or omissions attributed to Ramos' use of the covered auto, neither De Leon's accident nor his injuries, as alleged in the State Court Complaint, arise out of or are attributed to Ramos' use of the covered auto.  As

such, Ramos does not fall within the Policy's definition of "insured person," and, thus, Progressive's duty to defend is not triggered.

In an attempt to overcome the above-described absence of any facts in the State Court Complaint connecting De Leon's injury to Ramos' use of the covered auto, Ramos argues that the State Court Complaint includes allegations of two distinct "uses" of the covered automobile that trigger Progressive's duty to defend Ramos; *to wit*: (1) Ramos' driving of the motor vehicle; and (2) the act of exiting the motor vehicle. (Pl.'s Opp., ECF 12, at p. 5). Ramos' argument, however, is misguided, because he fails to consider or identify any facts in the State Court Complaint that causally connect these two alleged "uses" of the covered automobile to the fall accident or to De Leon's injuries.

As noted, when interpreting similar automobile insurance coverage provision, the Third Circuit held that "to be within the scope of coverage under such a policy, the use of the vehicle must be causally connected to the injury; where a vehicle is 'merely incidental' to the accident, it is not in 'use' within the meaning of the policy." *Agway*, 48 F. App'x at 38 (citation omitted). The injury must be "vehicle-caused." *Huber*, 587 A.2d at 334. Here, there are no factual allegations in the State Court Complaint supporting a "vehicle caused" injury. To the contrary, in the State Court Complaint, De Leon alleges that he suffered various injuries as a result of his fall at a construction site. As alleged, neither De Leon's fall nor his injuries were in any way connected to Ramos' purported "use[s]" of the covered automobile, *i.e.*, Ramos' acts of driving or the alleged "dump[ing]" of De Leon out of the covered automobile.

Ramos' reliance on the bald allegation in the State Court Complaint that De Leon's injuries "substantially worsened" "during" the drive to the hospital in the covered automobile do not change the outcome. Neither this lone allegation nor any others in the State Court Complaint

10

support any connection between the injuries that De Leon alleges he suffered from his fall at the construction site and Ramos' use of the vehicle. For example, the State Court Complaint does not contain any factual allegations that Ramos drove the covered automobile negligently or that such negligent driving caused or worsened De Leon's injuries. De Leon merely alleges that his medical condition worsened "during" the drive. In the absence of any factual allegations that De Leon's actual injuries were caused by Ramos' driving of the covered automobile or worsened because of Ramos' negligent driving, no covered claim is asserted in the State Court Complaint.

Ramos' reliance on De Leon's allegation that Ramos "dumped" De Leon at the hospital entrance fails for the same reasons. First, the State Court Complaint contains no allegations connecting the alleged "dump[ing]" of De Leon at the hospital to his alleged injuries. Further, Ramos' reliance on *Knightbrook Insurance Co. v. Northfield Insurance Co.*, 158 F. Supp. 3d 336 (E.D. Pa. 2016) to support his argument that this "dump[ing]" constituted a "use" of the covered automobile is misplaced. In *Knightbrook*, the underlying plaintiff alleged that he was injured when he fell from his wheelchair while being removed from an ambulance by way of the ambulance's permanently affixed automatic wheelchair lift. *Id.* at 342. The court concluded that the plaintiff's injuries as alleged were sufficiently causally connected to the "use" of the ambulance since the automatic wheelchair lift was part of the vehicle and being used as intended. *Id.* Here, the State Court Complaint contains no factual allegations connecting either De Leon's injuries or the alleged "dump[ing]" to the "use" of a covered vehicle.

With respect to Ramos' alleged "dump[ing]" argument, this case is more aligned with *U.S. Underwriters Insurance Co. v. Liberty Mutual Insurance Co.*, 80 F.3d 90 (3d Cir. 1996). In *Liberty*, the underlying plaintiff alleged that he suffered an injury after slipping on some grease on the ground when exiting a covered automobile. *Id.* at 95. The Third Circuit predicted that "the

Supreme Court of Pennsylvania would hold that an individual who slips on grease from a nearby kitchen when he steps on the ground while alighting from his automobile has not been injured as a result of maintenance or use of a motor vehicle." *Id.* This Court likewise finds the alleged "dump[ing]" of De Leon at the hospital and any possible injury this may have caused, is disconnected to any alleged "use" of the covered automobile.

In sum, the factual allegations pled in the State Court Complaint do not support Ramos' contentions that Progressive has a duty to defend him in the underlying State Court Action because said complaint does not allege either an accident or an injury "arising out of" Ramos' "use" of a covered auto. As such, Ramos does not fall within the Policy's definition of an "insured person." Accordingly, Progressive's motion to dismiss Count I is granted.

**B.  Ramos' Bad Faith Claim (Count II)**

At Count II of the amended complaint, Ramos alleges that Progressive acted in bad faith when it failed to defend Ramos in the Underlying State Court Action. To prevail in an insurance bad faith claim, "a plaintiff must demonstrate: (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Where an insured is not entitled to coverage under the insurance policy, the insurance provider has no obligation to defend and, thus, there can be no bad faith for declining coverage. *Cozza ex rel. Cozza v. State Farm Fire and Cas. Co.*, 440 F. App'x 73, 75-76 (3d Cir. 2011) (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 (3d Cir. 1999)) ("Where the sole basis for a bad-faith claim is the denial of coverage, there can be no bad-faith claim if the insurer was correct as a matter of law in denying coverage.").

Here, for the reasons set forth, this Court found that Progressive did not and does not have a duty to defend Ramos in the Underlying State Court Action. In the absence of such a duty, Progressive's denial of coverage cannot constitute bad faith. *See id*. Accordingly, Ramos' claim for bad faith is dismissed.

**CONCLUSION**

For the reasons set forth, the allegations in the Underlying State Court Complaint do not assert a claim potentially falling within the Policy's scope of coverage. As such, Progressive had no duty to defend Ramos, and as a result, did not act in bad faith. Accordingly, Progressive's motion to dismiss is granted.

*NITZA I. QUIÑONES ALEJANDRO*